*Judge Pauley*

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Brian T. McCarthy (BM-4808)

**'09 CIV 6158**

RECEIVED
JUL 09 2009
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

BNAVIOS NAVEGACAO LDA,

                                        Plaintiff,          09 CV

               -v-
                                                            **VERIFIED COMPLAINT**

SUNRISE SHIPPING (U.K.) CO. LTD.,

                                        Defendant.
------------------------------------------------------------------x

Plaintiff, BNAVIOS NAVEGACAO LDA, (hereinafter "BNAVIOS"), by its

attorneys, CHALOS, O'CONNOR & DUFFY, L.L.P., as and for its Verified Complaint

against Defendant, SUNRISE SHIPPING (U.K.) CO. LTD., (hereinafter "SUNRISE"),

alleges upon information and belief as follows:

<u>JURISDICTION</u>

1.     The Court has subject matter jurisdiction by virtue of the fact that the

underlying claim herein is an admiralty and maritime claim within the meaning of Rule

9(h) of the Federal Rules of Civil Procedure and within the admiralty and maritime

jurisdiction of this Court under 28 U.S.C. § 1333.

2.     The Court also has jurisdiction pursuant to 9 U.S.C. § 1, *et seq.* and 9

U.S.C. § 201, *et seq.*

<u>THE PARTIES</u>

3.      At all times material hereto, Plaintiff, BNAVIOS, was and still is a foreign

business entity with a principal place of business at Rua Das Murcas, 15, 2° Andar

Funchal, Madeira, Portugal.

4.      The Plaintiff, BNAVIOS, is engaged in business as an owner, or disponent

owner, of an ocean-going vessel that transport cargo in exchange for payments of hire or

freight, including the M/V BULK PACIFIC.

5.      At all times material hereto, Defendant, SUNRISE, was and still is a

foreign business entity with a place of business at Room 2309-2310, Unit B of Dalian

Mingshi Fortune Center, No. 20 Gangwan Road, Zhongshan District, Dalian, China

116001.

6.      The defendant, SUNRISE, was and is a charterer of ocean going vessels

that transport cargo, including the M/V BULK PACIFIC.

**AS AND FOR A CAUSE OF ACTION**
**FOR BREACH OF A MARITIME CONTRACT**

7.      On or about May 28, 2009, Plaintiff, BNAVIOS, as owner, or disponent

owner of the MV BULK PACIFIC, and Defendant, SUNRISE, as charterer, entered into

a charter agreement for a time charter trip of eighteen to thirty days. *See* Attachment

"A".

8.      This charter party agreement for the M/V BULK PACIFIC, memorialized

on a "New York Produce Exchange" charter party form, is a maritime contract.

9.      During the course of the voyage, stevedores hired by SUNRISE and acting

at the direction of SUNRISE, damaged Crane No. 1 of the M/V BULK PACIFIC, by

overloading the crane and severing the crane's steel cable.

2

10.    The cost to replace the steel cable for Crane No. 1 was $3,221.00, and additional costs were incurred by BNAVIOS to survey the damage to Crane No. 1.

11.    During the course of the voyage, Defendant SUNRISE failed to provide all bunkers required by the vessel, and Plaintiff BNAVIOS was required to provide bunkers to ensure the vessel could continue its voyage.

12.    On or about July 5, 2009, Plaintiff BNAVIOS presented defendant SUNRISE with a Statement of Account in accordance with the charter party, dated May 28, 2009, evidencing the sums due and owing as a result of BNAVIOS' performance of its obligations under the charter party.

13.    The Statement of Account provided a total sum of US$24,138.73 due and owing by defendant SUNRISE in favor of plaintiff BNAVIOS for bunkers supplied and damaged caused to Crane No. 1.

14.    Despite repeated demands by plaintiff BNAVIOS to defendant SUNRISE, for this outstanding sum of US$24,138.73, defendant SUNRISE, in breach of the terms of the charter-party, dated May 28, 2009, has failed and otherwise refused to pay the sum due and owing plaintiff BNAVIOS.

15.    Pursuant to the terms of the charter-party, dated May 28, 2009, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply. London arbitration provides that the prevailing party is entitled to interest, costs and legal fees.

16.    As best as can now be estimated, Plaintiff BNAVIOS expects to recover the following amounts in arbitration from Defendant SUNRISE:

      A.    Principal claim            $24,138.73
           (Breach of the charter-party, dated May 28, 2009)

| B. | Estimated Interest on claims: 2 years at 5.33% | $ 2,641.76 |
|----|----|----|
| C. | Estimated attorney's fees: | $10,000.00 |
| D. | Estimated arbitration costs/expenses: | $10,000.00 |
| | **Total:** | **$46,780.49** |

PRAYER FOR RELIEF

17.     Notwithstanding the fact that the liability of the Defendant, SUNRISE, for its breach of the charter party agreements, as set forth herein, will be pursued in London arbitration, there are now, or will be during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payments for goods or services, bills of lading, cargo, unmatured debts and the like belonging to or claimed by the defendant within this District and held by various parties, as garnishees.

18.     The Plaintiff BNAVIOS has sufficient reason to believe that the Defendant SUNRISE's tangible or intangible personal property, *to wit*: bank accounts; payments in U.S. dollars from or to the Defendant's customers or venders, payments in U.S. dollars from or to other vessel Owners; Clearing House Interbank Payment System (CHIPS) credits; and/or operational funds, being transferred through intermediary banks in the form of electronic payment transfers (*i.e.* "EFT"s) and are located in this District in the possession of several garnishees, namely banks or financial institutions located in New York that process EFT payments of U.S. dollars.

19.     As set forth in the accompanying declaration of Brian T. McCarthy, the Defendant SUNRISE, cannot be found within this District within the meaning of Rule B

of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of
Civil Procedure.

20.    Because this Verified Complaint sets forth an *in personam* maritime claim
against the Defendant SUNRISE, because the Defendant SUNRISE cannot be found
within this District within the meaning of Rule B of the Supplemental Rules for
Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, because the
Plaintiff has reason to believe that the property of the Defendant may be found in this
district and because there is no statutory or maritime bar to an attachment, the
requirements for the issuance of Rule B Process of Maritime Attachment and
Garnishment are met.

21.    The Plaintiff seeks the issuance of process of maritime attachment so that
it may obtain security for its claims against the Defendant SUNRISE and/or *quasi in rem*
jurisdiction over the property of the Defendant so that an eventual judgment can be
satisfied.

WHEREFORE, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing them
to appear and answer under oath all, and singular, the matters alleged in the Verified
Complaint;

B.    That since the Defendant cannot be found within the District, as set forth
in the Declaration of Brian T. McCarthy, and pursuant to Rule B and Rule E of the
Supplemental Rules of Certain Admiralty and Maritime Claims, this Court issue an Order
directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment
pursuant to Rule B and Rule E of the Supplemental Rules for Certain Admiralty and
Maritime Claims, attaching all of the Defendants' tangible or intangible property or any

other funds held by any garnishees in the district which are due and owing, or other

property of, or for the benefit of, the Defendant, up to the amount of **$46,780.49**, to

secure and satisfy the Plaintiff's claims, and that all persons claiming any interest in the

same be cited to appear and pursuant to Supplemental Admiralty Rule B and Rule E

answer the matters alleged in the Complaint;

C.      That Plaintiff may have such other, further and different relief as may be just and

proper.

Dated: Port Washington, NY
      July ___, 2009

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
BNAVIOS NAVEGACAO LDA

By:

Brian T. McCarthy (BM-4808)
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Email: bmccarthy@codus-law.com

6

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605
Brian T. McCarthy (BM-4808)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BNAVIOS NAVEGACAO LDA,

                                 Plaintiff,          09 CV

       -v-                               **VERIFICATION OF**
                                              **COMPLAINT**

SUNRISE SHIPPING (U.K.) CO. LTD.,

                              Defendant.
-----------------------------------------------------------------x

Pursuant to 28 U.S.C. § 1746, BRIAN T. MCCARTHY, Esq., declares under the penalty

of perjury:

      1.     I am associated with the law firm of Chalos, O'Connor & Duffy, attorneys for the

Plaintiff BNAVIOS NAVEGACAO LDA herein;

      2.     I have read the foregoing complaint and know the contents thereof; and

      3.     I believe the matters to be true based on documents and information obtained

from employees and representatives of the Plaintiff through its underwriters and attorneys. The

reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is

a foreign corporation, whose officers are not in this district, and whose verification cannot be

obtained within the time constraints presented by the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Port Washington, New York
      July 9, 2009

                                      CHALOS, O'CONNOR & DUFFY, LLP
                                      Attorneys for Plaintiff

By:

                                      Brian T. McCarthy (BM-4808)
                                      366 Main Street
                                      Port Washington, New York 11050
                                      Tel:  (516) 767-3600
                                      Fax:  (516) 767-3605
                                      Email: bmccarthy@codus-law.com

# Attachment A



*BULK PACIFIC*
*SUNRISE*

## Time Charter
### GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913-Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1   **This Charter Party**, made and concluded in _London,_ _28th_ day of _May_ _19_ _2009_

2   Between _BNAVIOS NAVEGACAO LDA, Madeira, Portugal_

3   Owners of the good _Maltese flag_ (Steamship/Motorship) _"BULK PACIFIC"_ of

4   of _23,536_ tons gross register, and _13,290_ tons net register, having engines of _____ indicated horse power

5   and with hull, machinery and equipment in a thoroughly efficient state, and classed

6   at _about_ _1,794,146/1,761,553_ cubic feet ~~grain~~/bale capacity, and about _39,245_ _metric_ tons of ~~2240 lbs.~~

7   deadweight capacity ~~(cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,~~

8   ~~allowing a minimum of fifty tons)~~ on a draft of _11.62 meters_ inches on _____ Summer freeboard, inclusive of permanent bunkers,

9   which are of the capacity of about _____ tons of fuel, and capable of steaming, ~~fully~~ *as on average of* laden, under good weather

10   conditions about _13.0_ knots on a consumption of about _28.0_ tons of _IFO 180 CST plus 2.0 metric tons MDO._ *See Clause No. 31.* ~~best~~

11   ~~Welsh coal~~ ~~best grade fuel oil~~ ~~best grade diesel oil,~~

12   now _trading_

12   _____ and _SUNRISE SHIPPING (U.K) CO. LTD_ Charterers of the City of _Dalian_

13   **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14   ~~about~~ *a time charter trip, one laden leg via Vietnam with black sea sand with duration about 18-30 days without guarantee via safe*

   *port(s), safe berth(s), safe anchorage(s), safe buoy(s), always afloat and always within Institute Warranty Limits* within trading limits ~~Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining~~

   r      o      s      p      i      s      p      o      r

15   the fulfillment of this Charter Party. *Acceptance of delivery of the vessel by Charterers shall not constitute waiver of Owners' obligation*

   *hereunder.*

16   Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot Hong Kong, any time day or night,*

17   *Sundays and Holidays included*

18   ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in Clause No 6 ), as~~

19   ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in Clause No.5.~~ Vessel on her delivery to be

20   ready to receive cargo *vessel's holds on delivery to be clean swept and dried up so as to receive Charterers' intended cargoes in all*

   *respects free of salt, rust scale and previous cargo residue to the satisfaction of the on-hire surveyor* ~~with clean swept holds and~~ tight,

   staunch, strong and in every way fitted for the service, having water ballast, *derricks* ~~winches~~

21   donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the ~~winches~~ *derricks* at one and the same

22   time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful *general* merchan-

23   dise, ~~including petroleum or its products, in proper containers,~~ excluding _See Clause 92_

24   ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

25   ~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North~~

26   ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~

27   ~~Mexico, and/or South America~~ _____ and/or Europe And/or

   ~~Africa,and/or Asia,and/or Australia,and/or Tasmania,and/or New Zealand;but excluding Magdalena River,River St.Lawrence between~~

28   ~~October 31st and May 15th, Hudson Bay and all unsafe ports: also excluding, when out of season, White Sea, Black Sea and the Baltic,~~

29

30

34

35   as the Charterers or their Agents shall direct, on the following conditions:

36   1. That the Owners shall provide and pay for all provisions, *fresh water,* wages *including all officers' and crews' overtime, immigration*

   and consular shipping and discharging fees of the Crew; shall pay for the

37   insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep

38   the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service *with all inspection certificates to comply with*

   *all current requirements imposed by either classification society and flag administration during the service.*

39   2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except *lubricating oil* as otherwise agreed, Port Charges, Pilotages,

   Agencies, Commissions,

40   Consular Charges (except those pertaining to the Crew *and flag*), and all other usual expenses, *including compulsory watchmen and*

   *compulsory garbage removal,* except those before stated, but when the vessel puts into

41   a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43 charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period
44 of six months or more.

45     Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47 for dunnage, they making good any damage thereto.

48     3. ~~That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~
49 ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than~~ ................ ~~tons and not-ore-than~~
50 ............ ~~tons and to be re-delivered with not less than~~ ........... ~~tons and not more than~~ ....... ~~tons.~~ *See Clause 30*

51     4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *USD 8,100 daily including overtime payable 10 days*
52 *in advance to Owners nominated bank account* ................ ~~United States Currency per ton on vessel's total deadweight carrying capacity,~~
~~including bunkers and~~
53 ~~stores, on~~ ................ ~~summer freeboard, per Calendar Month~~, commencing on and from the day of her delivery, as aforesaid, and at
54 and after the same rate for any part of a *day* ~~month~~: hire to continue until the hour of the day of her re-delivery in like good order and condition,
ordinary
55 wear and tear excepted, to the Owners (unless lost) ~~at~~ *on dropping last outward sea pilot one safe port Singapore, any time day or night,*
*Sundays and Holidays included* unless otherwise mutually
56 agreed. Charterers are to give Owners not less than *10* days *approximate*
57 notice of vessel's expected date of re-delivery, and probable port *and 7/5/3 days definite notice with definite port. Charterers to keep Owners*
*advised of vessel's movement and notify Owners immediately of unforeseen delays.*

58     5. Payment of said hire to be made ~~in New York~~ in cash in United States Currency, ~~semi-monthly~~ *10 days* in advance, ~~and for the last half month~~
or
59 ~~part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes~~
60 ~~due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers.~~ *but always subject to the wordings of Clause 29*
otherwise failing the punctual and regular payment of the
61 hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-
62 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charters. ~~Time to count from 7 a.m. on the working-day~~
63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~
64 ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65     Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject
66 to 2½% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
67 of such advances.

68     6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place that Charterers or their Agents may
69 direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where it is customary for similar size vessels to safely~~
70 ~~lie aground.~~

71     7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~
74 ~~paying Owners~~ ................ ~~per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~
75 ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~ *No passengers.*

76     8. That the captain shall prosecute his voyages with the utmost dispatch, and shall render all customary assistance with ship's crew and
77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78 agency; and Charterers are to load, stow, *discharge* and trim the cargo at their expense under the supervision of the Captain, who is to sign Bills of
Lading for
79 cargo as presented, in *strict* conformity with Mate's ~~or Tally Clerk's~~ receipts.

80     9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82     10. ~~That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted~~
83 ~~with the utmost dispatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the~~
84 ~~rate of $1.00~~ *USD 10.00* ~~per day~~ *per person for such accommodation and victualling excluding wines and spirits.* ~~Owners to victual Tally~~
~~Pilots and Customs Officers and also, when authorized by Charterers or their Agents, to victual Tally~~
85 ~~Clerks, Stevedore's Foreman, etc, Charterers paying at the current rate per meal, for all such victualling.~~

86     11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88 terers, their Agents or Supercargo, when required, with *a legible* a true copy of daily *deck and engine Logs duly translated in English language,*
showing *among others* the course of the vessel and distance run and the con-
89 sumption of fuel.

90     12. ~~That the Captain shall use diligence in caring for the ventilation of the cargo.~~

91       13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~ ...........................................

92       .........................................................................................................................................................

93       ~~on giving written notice thereof to the Owners or their Agents~~ ...........~~days previous to the expiration of the first-named term, or any declared option.~~

      14. That if required by Charterers, time not to commence before ___00:01 *hours local time 28ᵗʰ May, 2009*___ and should vessel not have *been delivered* given ~~written notice of readiness~~ on or before ___24:00 *hours local time 31st May, 2009*___ ~~but not later than 4 p.m.~~ Charterers or

94    their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

      15. That in the event of the loss of time from deficiency *and/or default* of men or *deficiency of* stores, fire, breakdown or damages to hull, machinery or equipment,

95    grounding, detention by average accidents to ship or cargo, dry docking for the purpose of examination or painting bottom, or by any other cause

96    preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by

97    defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

98    thereof, and all extra expenses shall be deducted from the hire. *Any stevedore and/or labour charges for breakdown of vessel's equipment not caused by Charterers to be for Owners' account unless above breakdown not consider as stevedoring damage. It is however understood that casualties, if any occurred, attributable to the Charterers or their servants such as but not limited to grounding as a consequence of wrong information regarding draft, will be borne by Charterers as well as all directly related consequences. Pirate attacks, if any suffered during the currency of this Charter Party will constitute an exception to off-hire events, the vessel will remain on hire for the entire duration of the hijacking.*

99       16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

30    returned to the Charterers at once. The Act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

101    Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

102       The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

103    purpose of saving life and property.

104       17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three Persons at *London* ~~New York,~~

105    one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

106    the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial *shipping* men.

107       18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and/or sub-hires* for any amounts due under this Charter, including General Aver-

      ↙ LIEN

108    age contributions, and the Charterers to have a lien on the ship for all monies paid in advance and not earned, and any overpaid hire or excess

109    deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

110    might have priority over the title and interest of the owners in the vessel.

111       19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

112    Crew's proportion. General Average shall be adjusted, stated and settled, according to ~~Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~

113    York-Antwerp Rules, *1974, as amended 1990 or any amendment in London* ~~1924, at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these~~

114    ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~

115    ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~

16    ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~

117    ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~

118    ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~

119    ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~

120    ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~

121    ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~

122    ~~United States money.~~

123       ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~

124    ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~

125    ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

126    ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~

127    ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

128    ~~ships belonged to strangers.~~ *It is understood that the Charter hire is not to contribute to General Average.*

129    Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133       20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the

134    cost of replacing same, to be allowed by Owners.

135       21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

136    ~~convenient place, bottom-cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~

137    ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138    *Vessel only to dry docked whilst performing this Charter except in case of emergency.* ........................................................................

139    .........................................................................................................................................................

140    22. Owners shall maintain the gear of the ship as *originally* fitted, providing gear (for all derricks) capable of handling lifts *as specified in Clause 31. Owners are to provide on the vessel sufficient light as on board for night work at hatches simultaneously free of charge Charterers and to maintain same in efficient working condition throughout this Charter* up to three tons, also

141    ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~

142    ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for~~

143    ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.~~ The

144    Charterers to have the use of any gear on board the vessel.

145    23. Vessel to work night and day, *Sundays and holidays included,* if required by Charterers, and all *derricks* ~~winches~~ to be at Charterers' disposal during loading and discharging;

146    ~~steamer to provide one winchmen per hatch to work winches day and night, as required, Charters agreeing to pay officers, engineers, winchmen,~~

147    ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~

148    ~~port, or labor unions, prevent crew from driving winches~~ *derricks,* shore *derrickmen* ~~Winchmen~~ to be paid by Charterers. In the event of a disabled *derricks* ~~winch or winches,~~ or

149    insufficient power to operate *derricks* ~~winches,~~ Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned

150    ~~thereby.~~ *4 cranes available on board and cannot serve simultaneously the 5 holds.*

151    ~~24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~

52    ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;~~

153    ~~etc.;" in respect of all cargo shipped under this charter to or from United States of America. It is further subject to the following clauses, both~~

154    ~~of which are to be included in all bills of lading issued hereunder:~~

155                        ~~U.S.A. Clause Paramount~~

156    ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~

157    ~~16,1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~

158    ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~

159    ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160                        ~~Both-to-Blame Collision Clause~~

161    ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~

162    ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~

163    ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~

164    ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~

165    ~~carrying ship or her owners to the owners of said goods and set-off, recouped or recovered by the other or non-carrying ship or her~~

166    ~~owners as part of their claim against the carrying ship or carrier.~~

167    25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-

168    drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169    port or to get out after having completed loading or discharging.

170    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the

71    navigation of the vessel, *acts of pilots and tug boats* insurance, crew, and all other matters, same as when trading for their own account.

172    27. A commission of *1.25* 2½ per cent is payable by the Vessel and Owners to *E. D. & F. Man Shipping Ltd., London*

173    on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

174    28. An address commission of *2.50* per cent payable to ......*the Charterers*....... on the hire earned and paid under this Charter.

*Additional Clauses 29-97 both inclusive as attached are to be fully incorporated in this Charter Party.*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under license from the Association of Ship Brokers & Agents (U.S.A.) Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original Charterers, or the insertion of new Charterers, such Charterers being early highlighted by underlining or use of colour or use of a lager font and marked as having been made by the licensee or end user as appropriate and not by the author

Owners :                                        Charterers :


**ED&F MAN**

### RIDER CLAUSES TO
### MV "BULK PACIFIC"
### CHARTER PARTY DATED 28TH MAY 2009

## Clause 29 - Hire Payment Clause

A) Charterers to pay first hire plus estimated value of bunkers on delivery, within 3 banking days after delivery of vessel and receipt of hire invoice to Charterers' office by fax or e-mail, original invoice to be followed by post/courier.   The invoice will be issued by BCM for and on behalf of BNavios and will be conveyed to charterers by e-mail through brokers' chain.   Owners letter headed invoice will follow as soon as possible but their receipt does not represent a precedent condition to the payment of the hires.   For all subsequent hire payments Owners to submit their hire invoice by fax/e-mail attachment in good time and relevant invoice in Nanjing.   No deductions allowed from hire payments for alleged Owners expenses.   Owners will advise Charterers in advance should anything be necessary in this respect and upon receiving Charterers green light they will proceed with the expenses which in this case can be deducted in the amount previously agreed between the parties.

B) Where there is any failure to make "PUNCTUAL AND REGULAR PAYMENT" due to oversight or negligence or error or omission of Charterers' employees, bankers or agents or otherwise for any reason where their is absence of intention to fail to make payment as set out, Charterers shall be given by Owners 3 banking days written notice to rectify the failure and where so rectified the payment shall stand as "PUNCTUAL AND REGULAR PAYMENT". If there is a failure of the bank, the Charterers to have two (2) working days grace to rectify the failure.

C) In the event that the vessel is expected to be redelivered to the Owners prior to the expiry of the last 15 days period that would be covered by the next payment of hire, Charterers shall be entitled to effect payment of hire on the basis of the estimated time necessary to complete the service.   It is understood that the estimated time necessary to complete the service will be assessed upon the information received by agents at discharging port Master's indications (not arbitrarily upon Charterers sole estimation).

D) Deleted.

E) Notwithstanding anything contained herein to the contrary, it is understood that if at any time during the currency of this Charter the hire payment shall become due on a Saturday, Sunday or holiday or outside normal banking hours, payment of hire may be made on the next banking day immediately following the date on which hire become due and such payment shall stand as "PUNCTUAL AND REGULAR PAYMENT".

F) Charterers have the right to withhold from charter hire during the period of this charter agreed off-hire time, but proper supporting statements are to be sent to Owners as soon as possible and original invoice.

G) Payment of hire to:

    Beneficiary:        Bnavios Navegacao LDA
    Bank:              Corner Banca SA
                      Via Canova 16



## ED&F MAN

### RIDER CLAUSES TO
### MV "BULK PACIFIC"
### CHARTER PARTY DATED 28TH MAY 2009

### Clause 29 - Hire Payment Clause — continued....

|                  | 6901 Lugano                        |
|------------------|------------------------------------|
|                  | Switzerland                        |
| Account No.:     | 344649/05                          |
| Swift code:      | CBLUCH22                           |
| Clearing:        | 8490                               |
| IBAN:            | CH3708490000344649005              |
| Correspondents:  | Citibank N.A.,                     |
|                  | 111 Wall Street, New York USA      |
| Swift:           | CITIUS33                           |
| Ref:             | MV Bulk Pacific                    |

### Clause 30

Vessel to be delivered with about 200 metric tons IFO 180 and about 75 metric tons MDO plus about 140 metric tons LSFO which is not at Charterers disposal. On delivery Charterers to take over fuels remaining on board and to remit with first hire its value calculated at the prices of USD 350.00/520.00 per metric ton respectively for IFO/MDO, about same quantity on redelivery and same prices. Charterers have the right to deduct from last sufficient hire payment value of bunkers estimated to remain on board on redelivery.

### Clause 31 - Description of Vessel

MV BULK PACIFIC
SID/BC BUILT JAPAN 1981
MALTESE FLAG
39245 MT DWT ON 11.62M SDFT
LOA/BEAM 188.56/28,40
MOULDED DEPTH 16,4 M
GRT/NRT 23536/13290
5 HOLDS/5 HATCHES MCGREGOR HYDRAULIC PISTONS DRIVEN
1,794,146 CBFT/GRAIN
1,761,553 CBFT/BALE
HOLD CUBIC BDOWN GRAIN/BALE
1)   295,793/288,130
2)   386,586/380,336
3)   376,557/369,495
4)   383,973/377,652
5)   351,237/345,940
HATCH COVERS DIMENSION
1)   20 X 12.5 MT
2-5) 20 X 15 MT
4 IHI ELECTRO-HYDRAULIC CRANES 25T SWL
OUTREACH CR 1,2,3: 10.1 M ABT
            CR 4    : 11.8 M ABT
3 X 8 CBM PEINER ELECTROHYDRAULIC GRABS WITH RADIO CONTROL
13 KNOTS ON 28 T (L)/26.5 (B) MT IFO 180 CST RME 25 + 2 MT MDO DMB
WWG 3.5 MT MDO

2


**ED&F
MAN**

**RIDER CLAUSES TO
MV "BULK PACIFIC"
CHARTER PARTY DATED 28TH MAY 2009**

## Clause 31 - Description of Vessel – continued....
VESSEL BURNS MDO WHEN MANOEUVRING, IN NARROW WATERS, IN DENSE FOG AND AT REDUCED SPEED.

ALL DETAILS ABOUT

OWNERS:        BNAVIOS NAVEGACAO LDA MADEIRA PORTUGAL
MANAGERS:      BULKER CHARTERING AND MANAGEMENT SA SWITZERLAND
               (COMMERCIAL MANAGERS)
CLASS:         LR
P AND I:       SWEDISH CLUB

OWNERS GUARANTEE VESSEL IS A SELFTRIMMER, SINGLEDECKER, BULK CARRIER WITHOUT ANY HORIZONTAL OBSTACLES AND IS GUARANTEED SUITABLE FOR DISCHARGING BY MECHANICAL GRABS. OWNERS FURTHER CONFIRM HOLDS FITTED WITH AUSTRALIAN LADDERS

H+M VALUE 10 MILLION USD

- NEGOTIATIONS AND POST FIXTURE TO BE KEPT STRICTLY PRIVATE AND CONFIDENTIAL.

- OWNERS GUARANTEE THAT ALL VESSELS CERTIFICATES WILL REMAIN VALID/UPDATED THROUGHOUT THE DURATION OF THE INTENDED PERIOD.

- OWNERS GUARANTEE THAT THE VESSEL GEARS/GRABS ARE IN FULL WORKING CONDITION.

- OWNERS GURANTEE THE VESSELS CRANE/GRABS CAN SERVE ALL HOLDS ALTHOUGH NOT SIMOULTANEOUSLY.


## Clause 32
Deleted.


## Clause 33
Charterers to have the benefit of any return insurance premium receivable by Owners from their Underwriters, as and when received from Underwriters, by reason of the vessel being in port for a minimum period of 30 days, if on full hire for this period and pro rata for the time actually on hire.


## Clause 34
Vessel performance, speed and consumption clause the Owners guarantee that the vessel particulars are as described in the vessel's description and that the vessel shall perform in accordance with such description.

For the avoidance of doubt, vessel performance is guaranteed in good weather conditions. "Good weather conditions" means, for the purposes of assessing the vessel's performance, conditions of up to and including Beaufort Force 4 (four).

3

**RIDER CLAUSES TO**
**MV "BULK PACIFIC"**
**CHARTER PARTY DATED 28TH MAY 2009**

## Clause 34 – continued....

Charterers have to employ Weathernews (former Oceanroute) service for weather forecast and routing recommendations.   In all cases where there is any disagreement b etween Owners and Charterers as to the vessel's performance, assessment of the same by Weathernews shall be final and binding on both parties.   In all cases, evidence of wind and sea conditions, and determinations as to the vessel's distance travelled, will be as per Oceanroutes' final determination save only in case of fraud or manifest error.

Any saving in consumption must be off-set against any reduction in speed, any saving in time must be off-set against any excess consumption, any saving in FO must be off-set against increased MDO and vice versa, and any overall saving on individual passage(s) must be set off against an overall loss on other individual passage(s).

## Clause 35

On/off hire bunker surveys to be at cost and time of those ordering same, Master/Chief Engineer to represent Owners.

## Clause 36 – Not Applicable

Both parties to have the option of canceling this Charter Party with reasonable notice if war breaks out between any two or more of the following countries to such an extent as to render the continuation of the Charter Party impossible: U.S.A., Great Britain, Japan, U.S.S.R., The People's Republic of China, France, Republic of Korea, North Korea provided no cargo on board.

## Clause 37

Should the vessel put back whilst on voyage by reason of an accident or breakdown or deviation upon the course of the voyage caused by sickness of or any accident to the crew or any person on board the vessel other than persons traveling at the request of Charterers, or by reason of the refusal of the Captain or crew to perform their duties, the hire shall be suspended from the time of putting back until she be again in the same position or equidistant position and regains the line of voyage, whichever is the shorter distance and voyage resumed therefrom.

Bunkers consumed during the period shall be for Owners' account.   Especially the following events to be deemed as off-hire until the vessel be again in the same or equivalent position and resumed the voyage:

A) In the event of deviation from landing invalid crew and/or stowaway and from salvage.
B) In the event of loss of time from strike of the crew.

## Clause 38

Charterers shall not in any event be liable for claims in connection with stevedore damages suffered by the vessel and/or equipment unless:

4



**ED&F**
**MAN**

RIDER CLAUSES TO
MV "BULK PACIFIC"
**CHARTER PARTY DATED 28TH MAY 2009**

### Clause 38 – continued....
A) Master advises Charterers or their agents in writing or by cable within 24 hours of occurrence of any damage for which the Master considers Charterers liable so that Charterers may claim against stevedores or parties responsible. In case of hidden damage, same to be reported as soon as discovered but always prior to redelivery.

B) Such damages shall have been entered in vessel's logbooks.

C) Master shall also have held stevedores or parties responsible for damage liable in writing or by cable with copy to Charterers.  It is understood that master will lodge lop to stevedores c/o agents at the port where damages occur but it wont be responsible for the acceptance of responsibility from the addresses of the lop.


If extent of damage cannot be ascertained on occurrence, Owners/Master must report occurrence of damage in accordance with A), B), and C), as above and details may follow when examination possible.  If at time of redelivery there remains outstanding damage for which Charterers may be liable but which, without affecting the seaworthiness or trading capability of vessel, can be repaired by Owners at any convenient time after redelivery. Owners undertake to accept redelivery under Clause No. 4 of this Charter Party.

If redelivery is accepted as above, Charterers undertake by offering an acceptable guarantee to reimburse Owners cost of repairs as ascertained later by mutually agreed surveyor when repairs carried out and liabilities established.


### Clause 39
Vessel to be delivered with valid fumigation, deratisation or deratisation exemption certificate on board and if this does not cover the whole period of time Charter and necessary cost of same and detention to be for Owners' account except provided for in Clause 2.


### Clause 40
Owners and Master to undertake best efforts to co-operate with Charterers for best stowage of cargo subject to capability of vessel.  Owners and Master also undertake to co-operate with Charterers in taking necessary steps for cargo fumigation, if necessary at Charterers' time and expenses.


### Clause 41
Vessel to possess the necessary certificates to comply with safety and health regulations and current requirements at all ports of call.


### Clause 42
Basic war risk premium on hull and machinery value to be for Owner account, any additional or increased premium and/or crew war bonus due the vessels trading to a war risk zone to be for Charterers account against Owners'



**ED&F MAN**

### RIDER CLAUSES TO
### MV "BULK PACIFIC"
### CHARTER PARTY DATED 28TH MAY 2009

underwriters voucher, which not to exceed Lloyds of London minimum rates.

**Clause 43**
Charterers to have the option of holding a superficial inspection at any time, Owners or Master giving every facility concerning cargo operations and seaworthiness to carry it out.

**Clause 44**
Deleted.

**Clause 45**
New Jason Clause, P and I Bunker Clause, BIMCO ISPS Clause and CONWARTIME 1993 Clause are deemed to be incorporated in this Charter Party.   All Bill(s) of Lading issued under this Charter Party shall contain the British Chamber of Shipping Clause paramount and General Clause Paramount, New Jason Clause and the New Both-to-Blame Collision Clause if applicable.

**Clause 46**
Vessel's hold on delivery to be clean swept/so as to be ready in all respects to receive Charterers' intended cargo, free of salt, rust scale and previous cargo residue to the satisfaction of independence surveyor.   If vessel fails to pass any hold inspection/test as above, the vessel should be placed off-hire from time of rejection until the vessel passes the re-inspection on pro rata basis.

Charterers' option to pay USD4,500.- lumpsum in lieu of hold cleaning excluding removal and disposal of dunnage and debris.   No intermediate hold cleaning BCS only one single trip.

Charterers to pay Owners USD 1,200 per month or pro-rata for cable/victualling/ entertainment.

**Clause 47**
Charterers have the option to load intended cargo at Charterers' time/expenses in accordance with vessel's strength and vessel's stability at Master's discretion.

Charterers have the option to weld padeyes on hold upon masters' approval at Charterers' time/expenses and same to be removed prior to redelivery but Charterers have the option to redeliver vessel without removing paying USD10.00 per padeye.

**Clause 48**
Charterers to undertake to keep Owners and Master informed during the period as regards the itinerary of the vessel and the name of their agents at ports of call.

**Clause 49**



## RIDER CLAUSES TO
## MV "BULK PACIFIC"
## CHARTER PARTY DATED 28TH MAY 2009

When required by Charterers, Owners to appoint their own agents at ports of call
**Clause 49 – continued....**
to attend husbandry matters, immigration formalities and other requirements
arising concerning crew, but Charterers will do their utmost to let Owners use
their own agents for the normal practice.

## Clause 50
Charterers have the right to ask Owners to authorize their or their agents to
issue and sign Bills of Lading on Owners behalf in strict accordance with Mate's
receipt.  The agents will not release Bills of Lading unless they receive Owners
authorisation failing which Charterers will be held responsible for all
consequences.

## Clause 51
Deleted.

## Clause 52
Throughout the period of this Charter vessel will have on board current valid and
up-to-date certificate and will so comply with all applicable requirements,
regulations and recommendations.
Any delay caused by non-compliance with the aforesaid or lack of proper
documentation and/or certificates and/or equipment and fittings required will be
considered off-hire and all expenses resulting from such delay, including bunkers
consumed during the period, will be for Owners' account.

## Clause 53
Opening and closing of hatches to be always done by crew members free of
expense to Charterers, if permitted by local port regulations.

## Clause 54
Deleted.

## Clause 55 - Owners' P & I Club:   Swedish Club
Charterers have the benefit of Owners P and I Club so far as the rules permit.
Notwithstanding anything that may be contained in this Charter Party to the
contrary, it is expressly agreed that the Owners shall remain responsible for and
indemnify the Charterers against all claims arising in connection with loss of life,
personal injury or similar claims as a result of ship's fault.

## Clause 56 - Trading Exclusions
All countries excluded with the exception of Singapore and Vietnam.

## Clause 57


ED&F
MAN

**RIDER CLAUSES TO**
**MV "BULK PACIFIC"**
**CHARTER PARTY DATED 28TH MAY 2009**

If the vessel is off-hire for a consecutive period of 15 days, Charterers have the
**Clause 57 – continued....**
right to cancel this Charter Party without any further obligations under this
contract on the part of the Charterers, provided no cargo remaining on board.

## Clause 58

Any taxes levied by country of vessel's registry to be for Owners' account.    Any
and all other taxes to be for Charterers' account.

## Clause 59

In the event of breakdown of crane(s) and or grab(s) by reason of disablement
or insufficient power or otherwise, the hire to be reduced pro-rata for the period
of such insufficiency in proportion to the number of cranes and or grabs that
were available at the time of breakdown of equipment.

If Charterers elect to continue work on hatch or hatches affected by breakdown
by hiring shore appliances, Owners are to pay for shore appliances but in such
case, Charterers are to pay full hire for all time shore appliances are working.
Any stevedore and/or labor charges additionally occurring due to breakdown of
vessel's equipment, including costs for standby of stevedore labor but maximum
one shift provided breakdown of vessel's equipment during loading and
discharging, to be for Owners' account.

It is understood that contents of this clause do not apply when eventual
breakdown of cranes is a consequence of Charterers' servant mishandling.

## Clause 60

Owners guarantee that the vessel is geared equipped singledeck, self-trimming
bulk carrier with engine(s) and bridge located after.

## Clause 61

In case of loss of time due to boycott, picket and at any port or place by the
shore and/or port labour and/or tugboat(s) and/or the pilot(s) and/or by
Governmental authority directly attributable to flag, Ownership and/or the terms
and conditions on which members of the Officers/crew where employed, vessel
then to be put off-hire for any time lost hereby and the lost of bunkers consumed
during the period to be for Owners' account.

## Clause 62 – Hamburg Rules

Neither the Charterers nor their Agents shall permit the issue of any bill of lading,
waybill or other document evidencing a Contract of Carriage (whether or not
signed on behalf of the Owner or on the Charterers' behalf or on behalf of any
Sub-Charterers) incorporating, where not compulsorily applicable, the Hamburg
Rules or any other legislation giving effect to the Hamburg Rules or any other
legislation imposing liabilities in excess of Hague or Hague/Visby Rules.
Charterers shall indemnify the Owners against any liability, loss or damage which



## RIDER CLAUSES TO
## MV "BULK PACIFIC"
## CHARTER PARTY DATED 28TH MAY 2009

may result from any breach of the foregoing provisions of this clause.

### Clause 63
Liabilities for cargo claims shall be borne by Owners and Charterers in accordance with the Interclub New York Produce Exchange Agreements in February 1984 and amended May 1984 or amended thereto.  The party having paid the claim shall before any settlement to be made submit to the other party supporting documents as soon as possible.  No settlement to be done without Owners and/or Owners' P and I Club approval.

### Clause 64
Owners guarantee to the best of their knowledge that vessel is not blacklisted by and Vietnam and or Singapore Countries and labor union.

### Clause 65
Any delay, expenses and/or fines incurred on account of smuggling, if caused by Master, Officers and/or crews to be for Owners' account.

### Clause 66
Deleted.

### Clause 67
Deleted.

### Clause 68
No derrickmen/winchmen from crew.

### Clause 69
Vessel uses marine gas oil in main engine when entering/leaving port and when maneuvering in narrow/shallow/restricted waters and in dense fog.

### Clause 70
Owners guarantee that vessels hatch covers are to be watertight all throughout this charter period and if any hatch cover found defective, same to be rectified at Owners time and expenses Charterers also have the right to carry hose test at any time duration this Charter Party.

### Clause 71
Cargo gear to be in fully efficient state throughout the currency of the Charter Party, Owners guarantee that the vessel's gear capacity is able to lift as described.

### Clause 72



## RIDER CLAUSES TO
## MV "BULK PACIFIC"
## CHARTER PARTY DATED 28TH MAY 2009

Owners warrant that all vessel's holds are clear of any fittings and/or superstructures such as car deck/curtain plates whatsoever.
### Clause 73
Should the vessel be arrested during the currency of this Charter at the suit of any person having or purporting to have a claim of any interest in the vessel, the hire is to be suspended for any period that the vessel remains unemployed as the result of such arrest and Owners shall reimburse to Charterers any expense directly resulting from such arrest. This Clause is in-operable should the arrest be caused by any act of omission of Charterers or their agents.

### Clause 74
Normal quarantine time and expenses for vessel entering ports(s) to be for Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness, etc. of Master/Officers/crew to be for Owners' account.

### Clause 75
Watchmen charges, if any, shall be borne by party arranged/ordered besides if compulsory shall be for Charterers' account.

### Clause 76
Deleted

### Clause 77
Charterers shall use their best endeavour to present the original Bills of Lading for discharge of the cargo at the discharge port.  Should the original Bills of Lading not arrive at the discharge port in time, Owners shall allow discharge/release of the cargo against a Letter of Indemnity in the Owners P and Ii Clubs' standard wording, signed by Charterers' authorised signatory.  Master will release the cargo to the consignees named in the Letter of Indemnity.

### Clause 78
Vessel's cargo gear and all other equipment shall comply with the regulations of the country in which vessel will be employed and Owners to ensure that vessel is at all times in possession of valid and up-to-date certificates of efficiency to comply with such regulations.  Gear certificates to be shown to Charterers or their agents if required.

If stevedores, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners agents to comply with the aforementioned regulations or because vessel is not in possession of such valid and up-to-date certificates of efficiency, then the Charterers may suspend hire for the time thereby lost.

It is understood that regulations of the country should not be more demanding than what imposed by classification society and/or flag administration.

10



## RIDER CLAUSES TO
## MV "BULK PACIFIC"
## <u>CHARTER PARTY DATED 28TH MAY 2009</u>

### Clause 79
All negotiation and eventual fixture to be kept private and confidential.

### Clause 80
Owners guarantee that the vessel has no relation to ex-Yugoslavia in Owners/vessel's flag/crew members etc.

### Clause 81
If longshoremen are not permitted to work due to failure of the Master and/or Owners and/or Owners' Agents to comply with the aforementioned regulations, any delay resulting therefrom and additional expenses accruing as a result thereof to be for Owners' account.

### Clause 82
Deleted.

### Clause 83
Owners have the option to bunker vessel at load/discharging port without interference of Charterers' operation.

### Clause 84 - Bimco Standard ISM Clause
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that the vessel and "the Company" (as defined by the ISM code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of "the Company" to comply with the ISM Code shall be for the Owners' account.

### Clause 85 - Bimco Standard Year 2000 Clause
Year 2000 conformity shall mean that neither performance nor functionality of computer systems, electronic and electro-mechanical or similar equipment will be affected by dates prior to or during the year 2000. Without prejudice to their other rights, obligations and defences under this Charter Party including, where applicable, those of the Hague or Hague-Visby rules, the Owners and the Charterers and in particular the Owners in respect of the vessel, shall exercise due diligence in ensuring year 2000 conformity. In so far as this has a bearing on the performance of this Charter Party.

### Clause 86
Deleted.

### Clause 87



## RIDER CLAUSES TO
## MV "BULK PACIFIC"
## CHARTER PARTY DATED 28TH MAY 2009

Deleted

### Clause 88
Owners to guarantee that vessel has valid cargo securing manual on board throughout this Charter period.

### Clause 89
Owners guarantee to the best of their knowledge that vessel is not blacklisted by any of vessel's calling ports and countries during whole of this Charter period.

### Clause 90
Arbitration in London and English law to applied.

### Clause 91
For the purpose of computing hire payments, the time for delivery/redelivery shall be adjusted to GMT.

### Clause 92 - Cargo Exclusion
Explosives of any kind including blasting caps and detonators, black powder, arms, ammunition and war material of any kind, nuclear fuel or substances or radio active material of any kind  and/or their wastes, acids, petroleum or its products, naphtha, turpentine, motor spirits, tar and its products, asphalt, pitch, sulphur, ammonium nitrate, harmful and corrosive fertilizers, calcium carbide, calcium hypochloride, borax, petroleum coke, scrap of any kind, motor blocks/turnings/shavings, creosote and creosoted goods, logs of any kind, livestock, copra and/or its products, salt, hides, cement, asbestos, caustic soda, charcoal, direct reduced iron/iron ore briquettes, sponge iron pre-reduced iron ore pellets, sludge ore, all concentrates especially nickel ore, copper, ferro manganese, zinc ashes, ferro silicon, pyrites, quick lime, sunflower seed expellers and pellets, niger seed, oil cakes, seed cakes, manioc and/or manioc pellets, fish meal, granite blocks, marble blocks, bones and meatbone meal, poly-chlorinated biphey1 (PCB's) sodium and potassium nitrates or mixtures thereof, hypo/oxy chloride, organic peroxide, resin, unless shipped in drums (PVC or synthetic resin to be allowed) all substances emitting inflammable gases when wet, bitumen, bullion, calcium, oxychloride, coca, coffee, tobacco, cotton and cotton waste, drugs, fire arms, fluorspar, jute, lil cakes, pitch products or waste, rags, sponge iron, petcoke, all inflammable, dangerous, injurious, hazardous and corrosive cargoes as per IMO are excluded.

### Clause 93
Owners confirm that vessel shall not be scrapped during this charter period.

### Clause 94
Master of vessel will follow Charterers' instructions for smooth performance of the voyage(s) as per Charter Party only.

12



**RIDER CLAUSES TO
MV "BULK PACIFIC"
CHARTER PARTY DATED 28TH MAY 2009**

**Clause 95**
Owners shall provide copy of certificates and information when required.


**Clause 96**
Vessel has in its possession a current ITF certificate or equivalent acceptable to the International Transport Workers Federation.


**Clause 97**
Owners guarantee that all officers and crew are complying with vaccination and sanitary regulations in all ports of call and corresponding certificates are available on board.    Any detention and/or fines resulting from not having there certificates on board to be for Owners' account.


**NEW BOTH–TO–BLAME COLLISION CLAUSE**
If the liability for any collision in which the vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:-


**BOTH–TO–BLAME COLLISION CLAUSE**
"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servant of the carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her Owners insofar as such loss or liability represents loss or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.


**GENERAL AVERAGE AND THE NEW JASON CLAUSE**
General Average shall be payable according to the York/Antwerp Rules, 1974, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:"

13

# ED&F MAN

## RIDER CLAUSES TO
## MV "BULK PACIFIC"
## CHARTER PARTY DATED 28TH MAY 2009

## NEW JASON CLAUSE

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the goods, Shippers, Consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, to be made by the goods, Shippers, Consignees or Owners of the goods to the carrier before delivery."

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

## CONWARTIME 1993

1. For the purpose of this Clause, the words:

   A) "Owners" shall include the shipowners, bareboat Charterers, disponent Owners, managers or other operators who are charged with the management of the vessel, and the Master; and

   B) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgment of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

2. The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgment of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3. The vessel shall not be required to load contraband cargo, or to pass through

14



**RIDER CLAUSES TO**
**MV "BULK PACIFIC"**
**CHARTER PARTY DATED 28TH MAY 2009**

any blockade, whether such blockade be imposed on all vessel, or is imposed
**CONWARTIME 1993 – continued....**
selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

4.  A) The Owners may effect war risks insurance in respect of the Hull and Machinery of the vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

B)     If the Underwriters of such insurance should require payment of premiums and/or calls because pursuant to the Charterers' orders, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5. If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the time as the next payment of hire is due.

6.  The vessel shall have liberty:

    A) To comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the vessel sails, or other Government to whose laws the Owners are subject or any other Government, or body or group whatsoever acting with the power to compel compliance with their orders or directions;

    B) To comply with the orders, directions or recommendations of any war risks Underwriters who have the authority to give the same under the terms of the war risk insurance;

    C) To comply with the terms of any resolution of the Security Council of the United nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

    D) To divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

15



**RIDER CLAUSES TO**
**MV "BULK PACIFIC"**
**CHARTER PARTY DATED 28TH MAY 2009**

## CONWARTIME 1993 – continued....

    E) To divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

7. If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging port, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners intention to do so and requesting them to nominate a safe port for such discharge.

    Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port or their own choice.

8. If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfillment of the Charter Party.

## P & I BUNKER CLAUSE

The ship shall have the liberty as part of the contract voyage to proceed to any port or ports at which bunker oil is available for the purpose of bunkering at any stage of the voyage whatsoever and whether such ports are on or off the direct and/or customary route or routes between any of the ports of loading or discharge named in this Charter Party and may there take oil bunkers in any quantity in the discretion of Owners even to the full capacity of fuel tanks and deep tanks and any other compartment in which oil can be carried, whether such amount or is not required for the chartered voyage.

## BIMCO ISPS CLAUSE FOR TIME CHARTERS PARTIES

(a) (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

    (ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

16



ED&F
MAN

**RIDER CLAUSES TO
MV "BULK PACIFIC"
CHARTER PARTY DATED 28TH MAY 2009**

## BIMCO ISPS CLAUSE FOR TIME CHARTERS PARTIES – continued....

(b)(i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where of all sub-Charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## GENERAL CLAUSE PARAMOUNT

This Bill of Lading shall have affect subject to the provisions of any legislation relating to the Carriage of Goods by Sea which incorporates the rules relating to Bills of Lading contained in the International convention dated Brussels, 25th August, 1924, and which is compulsorily applicable to the Contract of Carriage herein contained. Such legislation shall be deemed to be incorporated herein, but nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities thereunder.

If any term of this Bill of Lading be repugnant to any extent to any legislation by this clause incorporated, such term shall be void to that extent, but no further.

Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from, or limitation of, liability.



**RIDER CLAUSES TO**
**MV "BULK PACIFIC"**
**CHARTER PARTY DATED 28TH MAY 2009**